# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**DANIEL B. O'FALLON,**
**Individually and on behalf of all**
**others similarly situated**                                          **PLAINTIFF**

**V.**                                                    **NO. 2:11cv36-KS-MTP**

**ENCORE RECEIVABLE MANAGEMENT,**
**INC. and DISCOVER FINANCIAL**
**SERVICES, L.L.C., a/k/a DFS Services, L.L.C.**              **DEFENDANTS**

## MEMORANDUM IN SUPPORT OF MOTION
## TO COMPEL ARBITRATION

### I.    INTRODUCTION

In the instant case, Plaintiff Daniel B. O'Fallon seeks to assert individual and putative class claims against DB Servicing Corporation, successor to DFS Services LLC, f/k/a, Discover Financial Services LLC (collectively, "Discover"), under the Fair Debt Collection Practices Act ("FDCPA") and state law.  Discover is a "credit card company" and Plaintiff's claims relate to a "financial obligation" he incurred with Discover.  *See* Exhibit "A" at ¶¶ 6 & 8.  Plaintiff's credit card is governed by a written cardmember agreement that included an agreement to arbitrate all disputes relating to his account.  Accordingly, Plaintiff should be compelled to arbitrate his claims against Discover on an individual basis.

## II.   PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

In October 1997, Plaintiff applied for and was issued a Discover Card account (the "Account") after submitting a written application. *See* Exhibit "B" at ¶ 7. Thereafter, Discover mailed Plaintiff his Discover Card and the applicable governing cardmember agreement. *See* Exhibit "B" at ¶ 8. The cardmember agreement provided that by using his Discover Card, Plaintiff agreed to be bound by the terms of the cardmember agreement. *See* Exhibit "B" at ¶ 9. The cardmember agreement included a "CHANGE OF TERMS" provision that allowed Discover to "change any term" or "add any new term." *See* Exhibit "B" at ¶ 10. It also provided that it was governed by "the laws of the State of Delaware and applicable federal laws." *See* Exhibit "B" at ¶ 10. Plaintiff was required to sign the back of his Discover Card before using it. *See* Exhibit "B" at ¶ 9.

In or about September 1999, a notice of amendment (the "September 1999 Notice") was inserted into and mailed with the Plaintiff's monthly billing statement. *See* Exhibit "B" at ¶ 13. The September 1999 Notice provided in bold capital letters:

> WE ARE ADDING A NEW ARBITRATION SECTION WHICH PROVIDES THAT IN THE EVENT YOU OR WE ELECT TO RESOLVE ANY CLAIM OR DISPUTE BETWEEN US BY ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM.  THIS ARBITRATION SECTION

>   WILL NOT APPLY TO LAWSUITS FILED BEFORE THE EFFECTIVE DATE.

*See* Exhibit "B" at ¶ 14. The "ARBITRATION OF DISPUTES" provision (the "Arbitration Provision") itself further provided:

>   In the event of any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account, any prior account you have had with us, your application, the relationships which result from your Account or the enforceability or scope of this arbitration provision, of the Agreement or of any prior agreement, you or we may elect to resolve the claim or dispute by binding arbitration.
>
>   IF EITHER YOU OR WE ELECT ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM.  PREHEARING DISCOVERY RIGHTS AND POST-HEARING APPEAL RIGHTS WILL BE LIMITED.  NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CARDMEMBERS WITH RESPECT TO OTHER ACCOUNTS, OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.

*See* Exhibit "B" at ¶ 14. The September 1999 Notice also gave Plaintiff the opportunity to reject the Arbitration Provision and other amendments by giving Discover notice "in writing." *See* Exhibit "B" at ¶ 14. Plaintiff did not "opt out" of the Arbitration Provision and continued to use his Discover Card thereafter. *See* Exhibit "B" at ¶ 14.

In 2003, Plaintiff was sent a further notice of the right to reject the Arbitration Provision (the "Rejection Notice"). *See* Exhibit "B" at ¶ 16. Plaintiff,

3

however, did not exercise his right to reject the Arbitration Provision.  *See* Exhibit "B" at ¶ 16.  The Arbitration Provision remains fully applicable to Plaintiff's Account.  *See* Exhibit "B" at ¶ 20.

### III.   ARGUMENT

**A.   The Arbitration Provision is Governed by the FAA.**

"Arbitration is favored in the law."  *See Grigson v. Creative Artist Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).  The Federal Arbitration Act ("FAA") is the embodiment of the "liberal federal policy favoring arbitration agreements." *See Green Tree Financial Corp. — Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)) (internal quotation marks omitted).  Accordingly, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *See Moses H. Cone,* 460 U.S. at 24-25; *Bhatia v. Johnston*, 818 F.2d 418, 421 (5th Cir. 1987).

The Arbitration Provision falls squarely within the ambit of the FAA. Section 2 of the FAA provides that "[a] written provision . . . in a contract evidencing a transaction involving commerce to settle by arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and

enforceable."[1] *See* 9 U.S.C. § 2. The Supreme Court has expressly held that the FAA evinces Congress' intent "to exercise [its] commerce clause power to the full." *See Allied-Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 277 (1995).

The Arbitration Provision was contained in "a contract evidencing a transaction involving [interstate] commerce" and represented "an agreement in writing to submit to arbitration an existing controversy arising out of" the account at issue. *See* 9 U.S.C. § 2. Plaintiff is a resident of Mississippi. *See* Exhibit "A" at ¶ 3. Discover is a Delaware corporation with its principal place of business in Illinois. *See* Exhibit "B" at ¶ 2. The issuer of Discover Card, Discover Bank, is also a Delaware bank with its principal place of business in Delaware. *See* Exhibit "B" at ¶ 5. Thus, there is no doubt that the Account involves interstate commerce. *See Dobson*, 513 U.S. at 268-69 (applying FAA to consumer termite contract); *Roberson v. Money Tree of Alabama, Inc.*, 954 F. Supp. 1519, 1523 (M.D. Ala. 1997) (finding FAA applicable to consumer credit agreement which "involv[ed] commerce").

Moreover, the Arbitration Provision expressly incorporated the FAA: "Your Account involves interstate commerce, and this provision shall be governed by the Federal Arbitration Act." *See* Exhibit "B" at Attachment "10." Where the parties

---

[1] The term "commerce" as used in the FAA means interstate commerce. *See* 9 U.S.C. § 1.

agree that their contract will be governed by the FAA, their choice must be enforced. *See Roberson*, 954 F. Supp. at 1523 n. 4 ("Here, because the [parties] have essentially stipulated that the FAA applies, the court must, and will, enforce the stipulation and apply the FAA to the arbitration agreement contained in the contract."). Accordingly, the FAA controls the validity and the enforcement of the Arbitration Provision in this matter.

**B.     Plaintiff's Claims are Subject to Arbitration.**

When considering a motion to compel arbitration under § 4, a court must "determine whether the parties agreed to arbitrate the dispute in question." *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 827 (S.D. Miss. 2001), *aff'd without opinion*, 34 Fed.Appx. 964 (5th Cir. April 5, 2002). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *See Webb*, 89 F.3d at 258. In the instant case, both requirements are met.

    **1.     Plaintiff has Agreed to Arbitrate the Claims Asserted.**

Plaintiff became bound by the terms of the cardmember agreement when he applied for and began using his Discover Card. *See* Exhibit "B" at ¶¶ 7-9. By not

exercising his right to "opt-out" of the Arbitration Provision, Plaintiff agreed to arbitrate all the claims asserted against Discover in this action.

"It is a cardinal rule of contract law, recognized by the Supreme Court more than a century ago, that a party is bound by a contract to which he signified his assent and he cannot be heard to complain that he did not read its contents." *See Marsh v. First USA Bank, N.A.,* 103 F. Supp. 2d 901, 919 (N.D. Tex. 2000) (citing *Upton v. Tribilcock,* 91 U.S. 45 (1875)).  While Plaintiff's original cardmember agreement did not contain an agreement to arbitrate, it did contain a "CHANGE OF TERMS" provision that allowed Discover to "add any new term[s]."  *See* Exhibit "B" at ¶ 10.  Plaintiff became bound by the terms of that cardmember agreement when he applied for a Discover Card, signed the application and the credit card, and began using the Account.  *See* Exhibit "B" at ¶ 9.

When Discover amended the cardmember agreement in 1999 to include the Arbitration Provision, it did so in full compliance with its contractual rights.  *See* Exhibit "B" at ¶ 12.  Moreover, governing Delaware law expressly authorizes amendments, including those relating to arbitration:

> (a) Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect, whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties. Without limiting the foregoing, ***such amendment may change terms by the addition of new terms*** or by the deletion or modification of

> existing terms, whether relating to plan benefits or features, the rate or rates of periodic interest, the manner of calculating period interest or outstanding unpaid indebtedness, variable schedules or formulas, interest charges, fees, collateral requirements, methods for obtaining or repaying extensions of credit, attorney's fees, plan termination, the manner for amending the terms of the agreement, ***arbitration or other alternative dispute resolution mechanisms***, or other matters of any kind whatsoever. . . .  Any notice of an amendment sent by the bank may be included in the same envelope with a periodic statement or as part of the periodic statement or in other materials sent to the borrower.

*See* 5 DEL. CODE § 952(a) (emphasis added).  Although Plaintiff was given an opportunity to "opt out" of the Arbitration Provision in both 1999 and again in 2003, he failed to do so on either occasion.  *See* Exhibit "B" at ¶ 14.  Thus, the arbitration provision constitutes a binding "written agreement to arbitrate" between Plaintiff and Discover.  *See* 9 U.S.C. § 4.

Applying Delaware law, courts have routinely enforced similar amendments, including arbitration clauses, adopted under similar circumstances in standard form consumer contracts.  *See, e.g., Lloyd v. MBNA America Bank, N.A.,* 27 Fed. Appx. 82, 84-85 (3d Cir. Jan. 7, 2002) (enforcing arbitration clause adopted through amendment); *Edelist v. MBNA America Bank,* 790 A.2d 1249, 1257-58 (Del. Super. 2001) (holding that Delaware law allowed lender "to unilaterally amend agreements by notice and opt-out provision."); *Grasso v. First USA Bank,* 713 A.2d 304, 309 (Del. Super. 1998) (holding plaintiff "unequivocally manifested acceptance" of amended cardholder agreement by making purchases and payments

8

on account).² Mississippi's District Courts have also enforced arbitration clauses added by amendment where the underlying contract was "governed by the laws of the State of Delaware." *See Beneficial National Bank, U.S.A. v. Payton,* 214 F.Supp.2d 679, 683 (S.D. Miss. 2001).

This same Arbitration Provision and the manner it was implemented were expressly validated by the District Court in *Pick v. Discover Financial Services, Inc.*, 2001 WL 1180278 (D. Del. Sept. 28, 2001). Like Plaintiff's, Pick's original cardmember agreement included a "CHANGE OF TERMS" provision. *Id.* at * 1. In 1999, Pick was notified of certain amendments, including the addition of "an arbitration section to the Agreement." *Id.* Also just like Plaintiff, Pick "did not notify [Discover] by [the deadline] that he disagreed with the Notice of Amendment and continued to use his Card after the effective date." *Id.* at * 3. In response to a putative Truth-in-Lending class action filed by Pick, the District Court compelled arbitration, and held that Pick was both "adequately notified" of the amendment and that the class action waiver was valid. *Id.* at * 4-5.

---

² The agreement to waive class actions in the Arbitration Provision is also enforceable. Applying Delaware law, courts have routinely upheld arbitration clauses containing similar terms. *See, e.g., Lloyd,* 27 Fed.Appx. at 84 (rejecting argument that arbitration clause was unconscionable because it barred classwide relief); *Pick v. Discover Fin. Servs.,* 2001 WL 1180278, at * 5 (D. Del. Sept. 28, 2001) ("it is generally accepted that arbitration clauses are not unconscionable because they preclude class actions"); *Sagal v. First USA Bank, N.A.,* 69 F.Supp.2d 627, 632 (D. Del. 1999) (enforcing class action waiver in putative Truth-in-Lending class action); *Edelist,* 790 A.2d at 1261 ("The Court finds nothing unconscionable about it and finds the bar on class actions enforceable.").

The instant case is no different. The original cardmember agreement contained a "CHANGE OF TERMS" provision that allowed Discover to make amendments. In 1999, Plaintiff was notified of the addition of the Arbitration Provision and given the opportunity to "opt-out." *See* Exhibit "B" at ¶ 12. In 2003, he was given a second opportunity to "opt-out." *See* Exhibit "B" at ¶ 16. He did not take advantage of either opportunity. *See* Exhibit "B" at ¶ 20. By failing to opt-out and continuing to use the Account, Plaintiff became bound by the Arbitration Provision. Accordingly, the Arbitration Provision is a valid and enforceable agreement to arbitrate between Plaintiff and Discover. *See Webb,* 89 F.3d at 258.

2. **Plaintiff's Claims are Within the Scope of the Arbitration Provision.**

The Arbitration Provision applies to "any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account, any prior account you have had with us, your application, the relationship which results from your Account or the enforceability or scope of this arbitration provision, of the Agreement or of any prior agreement." *See* Exhibit "B" at ¶ 14. The expansive scope of the Arbitration Provision covers all of the putative claims Plaintiff seeks to assert in this action.

Arbitration clauses that apply to "any controversy, claim, . . . dispute, . . . or misunderstanding" are deemed to be very broad and cover all possible claims that might arise. *See Municipal Energy Agency of Miss. v. Big Rivers Electric Corp.*, 804 F.2d 338, 342 (5th Cir. 1986). In fact, "[i]t is difficult to imagine broader general language than . . . 'any dispute.'" *See In re Sedco, Inc.*, 767 F.2d 1140, 1145 (5th Cir. 1985) (quoting *Caribbean Steamship Co. v. Sonmez Denizcilik Ve Ticaret*, 598 F.2d 1264, 1266 (2d Cir. 1979)). "Courts determining whether a particular claim falls within the scope of the arbitration agreement focus on factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying those claims touch matters covered by the parties' agreements then those claims must be arbitrated, whatever the legal labels attached to them." *See Waste Management, Inc. v. Residuos Industriales Multiquim, S.A.,* 372 F.3d 339, 344 (5th Cir. 2004) (internal quotation marks, citation and ellipsis omitted). Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000) (quoting *Moses H. Cone,* 460 U.S. at 25).

All of the claims asserted by Plaintiff in the instant case are subject to binding arbitration. *See* Exhibit "B" at Attachment "10." Plaintiff has asserted various claims against Discover relating to the "financial obligation" he incurred with Discover. *See* Exhibit "A" at ¶ 8. Federal statutory claims are subject to

arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991) ("It is now clear that statutory claims may be subject to an arbitration agreement, enforceable pursuant to the FAA."). The Fifth Circuit has specifically found that FDCPA claims are arbitrable. *See Sherer v. Green Tree Servicing LLC,* 548 F.3d 379, 383 (5th Cir. 2008) (reversing denial of motion to compel FDCPA claims). The broad scope of the Arbitration Provision covers all of Plaintiff's "statut[ory]" and "common law" claims. *See* Exhibit "B" at Attachment "10." Thus, all of those claims must be resolved solely through arbitration.

## IV.   CONCLUSION

Plaintiff has agreed to arbitrate all claims relating to the subject Discover Card Account. The scope of the Arbitration Provision covers all of the substantive and putative class action claims he has asserted in this action. Therefore, Plaintiff should be compelled to arbitrate any claim he seeks to assert against Discover on an individual basis.

This the 11th day of April, 2011.

                        Respectfully submitted,

                        **DB SERVICING CORPORATION, successor to DFS Services LLC, f/k/a Discover Financial Services LLC**

                        By: /s/ Mark H. Tyson
                              Of Counsel

Mark H. Tyson (MSB #9893)
David A. Norris (MSB #100616)
Stephen T. Masley (MSB #101870)
McGLINCHEY STAFFORD, PLLC
City Centre South, Suite 1100
200 South Lamar Street (Zip - 39201)
Post Office Drawer 22949
Jackson, Mississippi  39225-2949
Telephone: (601) 960-8400
Facsimile:   (601) 960-3520
**mtyson@mcglinchey.com**
**dnorris@mcglinchey.com**
**smasley@mcglinchey.com**

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have this day served via electronic filing and/or U.S. Mail, postage prepaid, a true and correct copy of the foregoing to:

Harry V. Satterwhite
Satterwhite and Associates, LLC
1325 Dauphin Street
Mobile, Alabama  36604
harry@satterwhite.com

Gary D. Thrash
Singletary & Thrash-Jackson, P.A.
Post Office Box 587
Jackson, Mississippi 39205-0587
stjxn587@aol.com

This the 11th day of April, 2011.


/s/ Mark H. Tyson
Of Counsel

255939.1